Nos. 15-1470, -1554, -1556

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

————————

MENTOR GRAPHICS CORPORATION,

*Plaintiff-Cross-Appellant*,

v.

EVE-USA, INC., SYNOPSYS EMULATION AND
VERIFICATION, S.A.S., SYNOPSYS, INC.,

*Defendants-Appellants*.

————————

On Appeal from the United States District Court for the District of Oregon,
Case Nos. 3:10-cv-00954-MO (Lead), 3:12-cv-01500-MO, 3:13-cv-00579-MO
Hon. Michael W. Mosman

————————

**BRIEF OF AMICI CURIAE HEWLETT-PACKARD COMPANY, ARUBA
NETWORKS, INC., NETGEAR, INC., NEWEGG INC., ORACLE
AMERICA, INC., RUCKUS WIRELESS, INC., SAFEWAY INC., SAS
INSTITUTE INC., VARIAN MEDICAL SYSTEMS, INC., VERIFONE,
INC., AND VIZIO, INC., IN SUPPORT OF DEFENDANTS-APPELLANTS
AND IN SUPPORT OF REVERSAL WITH RESPECT TO DAMAGES**

————————

Sean C. Cunningham
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101
619.699.2700
*Counsel for Amici Curiae*

July 24, 2015

## CERTIFICATE OF INTEREST

Counsel for *Amici Curiae* certifies the following:

1.     The full name of every party or amicus represented by me is:

      Hewlett-Packard Co.
      Aruba Networks, Inc.
      NETGEAR, Inc.
      Newegg Inc.
      Oracle America, Inc.
      Ruckus Wireless, Inc.
      Safeway Inc.
      SAS Institute Inc.
      Varian Medical Systems, Inc.
      VeriFone, Inc.
      VIZIO, Inc.

2.     The name of the real parties in interest (if the parties named in the caption are not the real parties in interest) represented by me are:

      Same

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties or amici curiae represented by me are:

      None, except as follows:

      Aruba Networks, Inc. is a wholly owned subsidiary of *amici* Hewlett-Packard Co;

      Safeway Inc. is a wholly owned subsidiary of Albertsons Holdings LLC.  No publicly traded company holds 10% or more of Safeway Inc. stock;

      VeriFone, Inc. is a wholly owned subsidiary of VeriFone Intermediate Holdings, Inc., which is a wholly owned subsidiary of VeriFone Systems, Inc., which is publicly traded; and

      AmTRAN Technology Co., Ltd., a publicly traded Taiwanese company, owns 10 percent or more of VIZIO, Inc.'s stock.

4.    The names of all law firms and the partners or associates that appeared for the parties or amici now represented by me in the trial court or agency or are expected to appear in this Court are:

DLA Piper LLP (US), Sean C. Cunningham.

Dated:  July 24, 2015

/s/ *Sean C. Cunningham*
Sean C. Cunningham
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101
619.699.2700
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICI CURIAE...................................................................1

INTRODUCTION .......................................................................................3

ARGUMENT................................................................................................5

    I.    This Court Should Confirm That Apportionment Is
           Required For Lost Profits Cases Involving Multi-
           Component Products ...................................................................5

    II.    This Court Should Confirm That The Entire Market
           Value Rule Applies, If At All, Only Where The Patented
           Feature Is The Basis For Customer Demand ...........................12

CONCLUSION............................................................................................15

WEST\259263766.2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Apple Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012) .................................................12

*Calico Brand, Inc. v. Ameritex Imports, Inc.*,
  527 F. App'x 987 (Fed. Cir. 2013) ......................................................8

*Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*,
  235 U.S. 641 (1915).............................................................................6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ..........................................................7

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega
  Systems, LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) ..........................................................7

*Garretson v. Clark*,
  111 U.S. 120 (1884)..............................................................5, 7, 9, 13

*Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*,
  761 F.2d 649 (Fed. Cir. 1985) ...........................................................14

*LaserDynamics, Inc. v. Quanta Computer Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ......................................................passim

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ........................................................13

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) .......................................................8, 11

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc) ...........................................9

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Seymour v. McCormick*,
  57 U.S. 480 (1853)..................................................................6, 7, 9

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  883 F.2d 1573 (Fed. Cir. 1989) .......................................14

*SynQor, Inc. v. Artesyn Technologies, Inc.*,
  709 F.3d 1365 (Fed. Cir.), *cert. denied*, 134 S. Ct. 648, 187 L. Ed. 2d 421
  (2013) ...........................................................................10

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F. 3d 1292 (Fed. Cir. 2011) .......................................3, 8

*VirnetX, Inc. v. Cisco Systems, Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ................................passim

*Westinghouse Elec. Co. v. Wagner Elec. Co.*,
  225 U.S. 604 (1912)......................................................6

*Yale Lock Mfg. Co. v. Sargent*,
  117 U.S. 536 (1886)......................................................5

## OTHER AUTHORITIES

Fed. Cir. R. 25(a) ...............................................................16

Fed. R. App. P. 25(c) .........................................................16

Fed. R. App. P. 29 .............................................................1

# INTEREST OF AMICI CURIAE[1]

Hewlett-Packard Company, Aruba Networks, Inc., NETGEAR, Inc., Newegg Inc., Oracle America, Inc., Ruckus Wireless, Inc., SAS Institute Inc., Varian Medical Systems, Inc., VeriFone, Inc., and VIZIO, Inc. are market-leading technology innovators and users of technology that develop, manufacture and sell complex products and services including wireless networking equipment, printers, computers, televisions, software services, payment solutions, radiation oncology treatment systems and software and IT infrastructure. Like most technology companies and users of technology, *Amici* have patent portfolios of their own but also frequently face patent licensing solicitations and patent infringement actions from competitors and non-practicing entities. Safeway Inc. ("Safeway") is a grocery company that purchases technology and like many mere users of technology, Safeway frequently faces patent licensing solicitations and patent infringement actions. Accordingly, *Amici* have an interest in the clear, consistent and fair application of patent damages law whether in the context of reasonable royalties or, as here, lost profits. This is especially true in light of the growing number of cases in which patentees seek to recover damages that are

---

[1] For purposes of Rule 29 of the Federal Rules of Appellate Procedure, no party's counsel played any role in authoring this brief, no party or party's counsel contributed money that was intended to fund preparation or submission of this brief, and no person other than *amici curiae* and its counsel contributed money that was intended to fund preparation or submission of this brief.

WEST\259263766.2

disproportionate to the value of the claimed invention or the harm caused to the patent holder that is attributable to the infringement.

Although an extensive body of recent case law addresses patent damages in the context of reasonable royalties, the case law on lost profits has not kept pace with this Court's evolving guidance on patent damages. The panel's decision in this case regarding (1) the applicability of the apportionment requirement when a patent owner seeks lost profits for sales of multi-component products and (2) the showing required to satisfy the entire market value rule will have ramifications for *Amici* and the technology industry and their customers and users more generally.

*Amici* file this brief with the consent of Appellants EVE-USA, Inc., Synopsys Emulation and Verification, S.A.S., Synopsys, Inc., and Cross-Appellant Mentor Graphics Corporation has stated that it does not oppose the filing of this brief. Therefore, all parties have consented to the filing of this brief.

WEST\259263766.2

## INTRODUCTION

Today's high-tech products and services are extremely complex and incorporate many components, features and, often, standardized technology. Those components and features are often patented extensively, such that a single product or service may incorporate thousands of patented inventions. Thus, the value of today's high-tech products and services almost always is attributable to multiple inventions and patents, and to a myriad of other considerations such as manufacturing quality, brand, product design, marketing and distribution, and the like. The complexity of these products and services exposes technology companies and users of technology to numerous potential patent infringement claims on each product. It is critical that the case law governing patent infringement damages, including in the context of lost profits, reflects this modern economic reality by awarding damages that are based only on the value of the patented invention's contribution, so that undue windfall awards do not threaten the continued development and availability of complex multi-component products and services.

This Court's recent decisions on reasonable royalties reflect this reality by seeking to confine damages awards to a portion of the value of the patented invention. *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. 3d 1292 (Fed. Cir. 2011); *LaserDynamics, Inc. v. Quanta Computer Inc.*, 694 F.3d 51 (Fed. Cir.

2012); *VirnetX, Inc. v. Cisco Systems, Inc*., 767 F.3d 1308, 1326 (Fed. Cir. 2014).

The entire market value rule remains a narrow exception, if it has any continuing

viability at all (see Section II below). *LaserDynamics*, 694 F.3d at 67. Under that

narrow exception, a patentee may secure royalties based on the revenue of an

entire multi-feature product only if the patentee proves that the patented feature is

the basis for customer demand for the entire product. *Id*.

Legal rules exist to protect against improper and inflated damages awards.

Yet here, the district court found that apportionment is not required for lost profits

damages. Despite recognizing its error after trial, rather than reversing or ordering

a new trial, the district court compounded its original error by ruling that the

patentee had satisfied the narrow entire market value rule without proof that the

patented invention was the basis of customer demand. This result is inconsistent

with the legal rules that govern fair and reasonable damages awards. *Amici*

therefore urge this Court to clarify its precedent that (1) a patentee must apportion

its damages in lost profits cases involving patents whose inventive aspect covers

features of multi-component products, to avoid improperly compensating a patent

holder for the profits attributable to unpatented features, and (2) if the entire

market value rule has any continuing viability as a separate test, it must be a

narrow exception that applies only if the patent holder proves that the patented

feature is the only basis for customer demand for an allegedly infringing multi-component product.

## ARGUMENT

### I.    THIS COURT SHOULD CONFIRM THAT APPORTIONMENT IS REQUIRED FOR LOST PROFITS CASES INVOLVING MULTI-COMPONENT PRODUCTS.

Both the Supreme Court and this Court have long held that apportionment is required even in cases involving lost profits.  In 1884, the Supreme Court held that apportionment applies to patent damages awards "in every case" where "a patent is for an improvement, and not for an entirely new machine or contrivance":

> The patentee … <u>must in every case</u> give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative, or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.

*Garretson v. Clark*, 111 U.S. 120, 121 (1884) (emphasis added) (internal quotations omitted).

Since *Garretson*, the Supreme Court has continued to apply the apportionment doctrine in lost profits cases and never wavered from this requirement.  *See Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 549-53 (1886) (upholding apportioned damages award calculated as one-half of plaintiff's lost

profits, holding "the defendant's infringement must be held to have caused the entire loss of the plaintiff by the reduction of prices, <u>after allowing a proper sum for any other patented device contained in the defendant's locks</u> and for any other causes which gave to the defendant an advantage in selling its locks") (emphasis added); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 646 (1915) (requiring apportionment of defendant's profits, holding "if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains") (quoting *Westinghouse Elec. Co. v. Wagner Elec. Co.,* 225 U.S. 604, 615 (1912) (internal quotations omitted)).

The principle of apportionment traces its roots to the mid-1800s, when in *Seymour v. McCormick* the Supreme Court reversed a trial court's lost profits damages award, cautioning that it was "a very grave error to instruct a jury 'that as to the measure of damages the same rule is to govern, whether the patent covers an entire machine or an improvement.'" 57 U.S. 480, 491 (1853). The error was especially grave because the asserted patent was "for an improvement of small importance when compared with the whole machine." *Id.* The Court gave an apt example of the problem that would arise without apportionment:

> If the measure of damages be the same whether a patent be for an entire machine or for some improvement in some part of it, then it follows that each one who has patented an improvement in any portion of a steam engine or other complex machines may recover the whole profits arising from the skill, labor, material, and

> capital employed in making the whole machine, and the
> unfortunate mechanic may be compelled to pay treble his
> whole profits to each of a dozen or more several
> inventors of some small improvement in the engine he
> has built.  By this doctrine, even the smallest part is made
> equal to the whole, and "actual damages" to the plaintiff
> may be converted into an unlimited series of penalties on
> the defendant.

*Id*. at 490-91.  The "unlimited series of penalties" arising from the failure to

apportion damages for "complex machines" has even greater application today,

when commonplace electronic devices contain thousands of components not

covered by an asserted patent.  Critically, the Supreme Court has never questioned

the principle of apportionment in patent cases, and all of the precedent cited above

remains decidedly good law.  That the Supreme Court's precedent arose under a

prior patent damages scheme, where a plaintiff was entitled to disgorge an

infringer's profits, is of no import.  The legal import remains the same—a plaintiff

is not entitled to profits unrelated to use of its patented invention.

Like the Supreme Court, this Court repeatedly has held that apportionment is

a fundamental requirement of patent damages.  Just last year, this Court confirmed

that apportionment is required for both royalty and non-royalty damages sought on

multi-component products containing unpatented features.  *See Ericsson, Inc. v. D-

Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("Indeed, apportionment is

required even for non-royalty forms of damages:  a jury must ultimately apportion

the defendant's profits and the patentee's damages between the patented feature

and the unpatented features using reliable and tangible evidence.") (quoting

*Garretson*, 111 U.S. at 121) (internal quotations omitted); *see also Ferguson*

*Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Systems, LLC*, 350

F.3d 1327, 1346 (Fed. Cir. 2003) (vacating damages award where "the district

court based its lost profits award on evidence of sales of a device embodying

features in addition to those present in the infringed '376 patent" and "therefore

failed to distinguish the allocation of profits that would have been made 'but for'

the infringement"); *Calico Brand, Inc. v. Ameritex Imports, Inc.*, 527 F. App'x

987, 995-96 (Fed. Cir. 2013) (vacating lost profits damages award where patentee

"elicited no testimony to distinguish between the value of the patented and

unpatented features").  These decisions are in line with this Court's recent

jurisprudence emphasizing the importance of apportionment in reasonable royalty

cases.  *See, e.g., Uniloc*, 632 F. 3d 1292; *LaserDynamics*, 694 F.3d 51; *VirnetX*,

767 F.3d 1308.  As this Court has confirmed:  "At all times, the damages inquiry

must concentrate on compensation for the economic harm caused by infringement

of the claimed invention."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869

(Fed. Cir. 2010) (emphasis added).  For products with multiple features, damages

must be tied to the features that actually practice the patent, because "[w]here

small elements of multi-component products are accused of infringement,

calculating a royalty on the entire product carries a considerable risk that the

patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d at 67.  There is no reason to exempt lost profits from this requirement.

But that is exactly what the district court did in the decision below, where, relying on *Rite-Hite Corp. v. Kelley Co.*, it found that apportionment is not required if the patent holder is successful in proving "but for" causation.  In *Rite-Hite*, this Court affirmed the district court's damages award that allowed a patentee to recover lost profits for the lost sales of its product that admittedly did not practice the asserted patent.  Contrary to the district court's ruling below, *Rite-Hite* addressed the threshold question of whether a patent holder can recover lost profits damages <u>at all</u> when the patent holder's products do not practice the patented invention.  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1542 (Fed. Cir. 1995) (en banc).  Thus, *Rite-Hite* did not purport to, and did not, erase a century of Supreme Court and Federal Circuit precedent requiring apportionment "in every case." *VirnetX*, 767 F.3d at 1326 (quoting *Garretson*, 111 U.S. at 121).

Given the "very grave error" (*Seymour*, 57 U.S. at 491) committed by the district court, the time has come for this Court clearly to state (once again) that the principle of apportionment applies to lost profits and all other forms of patent damages.  That is, reasonable royalties, lost profits and all other types of patent infringement damages must be based on the value of the patented invention and not

on the value of unpatented features, functions, and characteristics of a product or service. There are many reasons for this rule of law, including (a) to avoid the potential that an alleged infringer will be forced to pay far more in compensation to patent holders for patents covering different parts of the same multi-component device than the value attributable to the patented inventions within that product or service, and (b) to prohibit a patent holder from expanding the scope of its rights beyond the legal reach of its patent. The district court's evisceration of the apportionment requirement is particularly problematic because in some cases, unapportioned lost profits have exceeded the entire revenue earned by the accused infringer. *See, e.g., SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365, 1380-81 (Fed. Cir.), *cert. denied*, 134 S. Ct. 648, 187 L. Ed. 2d 421 (2013). It is for this reason that apportionment must be even more rigorously applied in lost profits cases.

It makes sense that apportionment would (and does) apply in lost profits cases. Allowing lost profits on the entire value of a product because "but for" the patented invention, consumers would not have purchased the accused product creates a real danger of greatly overvaluing the contribution of the patent. As this Court has recognized, there may be "a plethora" of "but for" reasons that drive sales of a complex product. *LaserDynamics*, 694 F.3d at 68. This is why a patent holder must prove that the patented invention "is what motivates consumers to buy

[the accused product] in the first place." *Id*. Likewise, the fact that there is substantial demand for a complex product containing an infringing feature does not itself indicate that the patentee lost any sales <u>because of</u> the inclusion of the infringing feature. Rather, such a purchase at most demonstrates general demand for the overall product. Without evidence tying demand only to the specific patented feature, the purchase is not probative of demand for the patented invention. The buyer may have chosen to purchase the product based on any of the "but for" features or for other reasons, not because of the patented feature. Thus, requiring apportionment where a party seeking lost profits on a complex product properly tethers the damages inquiry to the economic harm actually caused by the infringement. *See ResQNet.com*, 594 F.3d at 869. On the other hand, not requiring apportionment in lost profits cases would allow multiple entities to obtain lost profits on the same product where each entity holds a patent on different "but for" features of the same product. Permitting multiple lost profits awards on a single product, where in reality only one entity could have sold such product, is illogical and cannot be justified.

The threat of paying for serial infringement claims (or even one claim) far exceeding the value of the improvement to which a patent is directed substantially decreases the incentive to manufacture competitive products and harms consumers and innovation. For this reason, this Court's clarification that apportionment

WEST\259263766.2

applies to lost profits is of far-reaching importance not only to the parties in this case, to the undersigned *Amici*, but also to the American economy generally. All of the district court's errors can be avoided in the future once this Court clearly holds that, where a patent covers less than all of a multi-component product, apportionment is required, whether for reasonable royalties or for lost profits.

## II.  THIS COURT SHOULD CONFIRM THAT THE ENTIRE MARKET VALUE RULE APPLIES, IF AT ALL, ONLY WHERE THE PATENTED FEATURE IS THE BASIS FOR CUSTOMER DEMAND.

The Court also should take this opportunity to abolish the entire market value rule (EMVR) or at least to confirm that the EMVR applies only where the patented feature is proven to be the basis for customer demand for the finished product. Because apportionment is required "in every case," *Amici* question the need for a separate EMVR analysis at all. *See* Brief for Altera Corp. et al. as Amici Curiae Regarding Standards on Damages in Support of Neither Party*, Apple Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901 (N.D. Ill. 2012) (Nos. 12-1548, 12-1549) at 6-9. *Amici* have been involved in countless cases where the EMVR was raised as an issue at trial (usually for the jury) when it should not have been raised. This is because customer demand for complex products and processes (such as the types of computers, networking equipment, payment solutions, and the software and methods that run on them or are run by them that *Amici* develop, sell and use) is driven by many, many considerations. But even in the cases where the "narrow

exception" might apply (*LaserDynamics*, 694 F.3d at 67), asking the separate

EMVR question still is not warranted, for a simple reason:  If by applying the

correct apportionment methodology, the result is that all or most of the profit is

attributable to the patented invention, then the end result of apportionment will be

the same as applying the EMVR.  On the other hand, if properly apportioning the

profits results in something less than the entire profit being attributable to the

patented invention, than having asked the EMVR question first was unnecessary

and confusing to the trial court and the jury.  Either way, applying apportionment

first without asking the EMVR question will lead to the same result—a properly

apportioned damages base, whether based on reasonable royalties or lost profits.

Thus, the EMVR is an unnecessary and misused addition to the apportionment

question.  The better approach, *Amici* contend, is to eliminate the separate EMVR

question and focus instead on the fundamental requirement of apportionment in

every case involving multi-component products.

     If the EMVR has any continuing viability, it must be confined to the truly

exceptional case in which "the entire value of the whole machine, as a marketable

article, is properly and legally attributable to the patented feature."  *VirnetX*, 767

F.3d at 1326 (quoting *Garretson*, 111 U.S. at 121) (internal quotations omitted).

"In other words, 'the entire market value rule allows for the recovery of damages

based on the value of an entire apparatus containing several features, when the

- 13 -

feature patented constitutes the basis for customer demand.'" *LaserDynamics*, 694 F.3d at 67 (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

This was not a truly exceptional case. The district court's conclusion here that a patentee may satisfy the EMVR merely because the patented feature is never sold without the unpatented features of the accused product and there is generalized demand for the accused product is contrary to this Court's precedent. The district court relied on *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989) (affirming district court's lost profits award for entire value of infringing water heater where defendant "did not identify or present any evidence of the value of [the] nonpatented components") and *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985) (affirming lost profits award calculated using infringer's profits on sales and rentals of amphibious marsh craft because defendant's profit margins were "reasonable approximation" of patentee's lost profits) for the proposition that "the entire market value rule is properly applied when the nonpatented device cannot be sold without the patented features." This Court should correct the district court's error. As discussed above, in today's world of complex devices and services, there are many patented features that cannot be sold without many other features that are unpatented (or patented in other patents). For example, a computer requires energy

WEST\259263766.2

to function that is provided through an often complex series of devices and, without energy, the computer does nothing. That does not mean that the power design technology inside the computer is the driver of demand for the computer, such that the entire value of the computer should be attributable to a power design patent. Similarly, networking devices require a clock timing (synchronization) method, but very few people would want to purchase a clock timing method on its own. That does not mean the clock timing mechanism drives consumer demand for networking devices. The district court's interpretation therefore is especially problematic in today's world, where complex electronic devices always include both patented and nonpatented components.

The district court's interpretation of the EMVR amounts to the same erroneous conclusion that apportionment is not required. Thus, for the same reasons discussed in Section I above, this Court should also clarify that the EMVR remains the narrow exception to the apportionment rule, and applies (if at all) only where the patented feature is the basis for the customer demand.

## CONCLUSION

If the district court's damages holdings were correct, the potential exposure for modern technology companies would be devastating. Companies would face the innovation-stifling reality that they may be forced to pay much more than once for the same act of infringement. Fortunately, that is not the law. This Court

should therefore take this opportunity to confirm that (1) a patent holder must

apportion its damages in lost profits cases just as it must in reasonable royalty

cases, and (2) the EMVR requires in every case proof that the patented feature is

the basis for customer demand.

Respectfully submitted,

Dated:  July 24, 2015                    By: */s/ Sean C. Cunningham*
                                             Sean C. Cunningham
                                             DLA PIPER LLP (US)
                                             401 B Street, Suite 1700
                                             San Diego, CA  92101-4297
                                             619.699.2700

                                             *Counsel for Amici Curiae*

WEST\259263766.2

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2015, I electronically filed the foregoing

BRIEF OF AMICI CURIAE with the Court's CM/ECF filing system, which

constitutes service, pursuant to Fed. R. App. P. 25(c), Fed. Cir. R. 25(a), and the

Court's Administrative Order Regarding Electronic Case Filing 6(A) (May 17,

2012).


*/s/ Sean C. Cunningham*
Sean C. Cunningham
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Ph: 619.699.2700

WEST\259263766.2

# <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Fed. R. App. Proc. 32(a)(7)(C), the undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. Proc. 32(a)(7)(B).

Excluding the exemption portions of the brief (as provided in Fed. R. App. Proc. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b)), this brief includes 3,598 words.

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. Proc. 32(a)(7)(C), the undersigned has relied upon the word count of this word-processing system in preparing this certification.

Dated:  July 24, 2015

*/s/ Sean C. Cunningham*
Sean C. Cunningham
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Ph: 619.699.2700

WEST\259263766.2